Good morning. Patricia Van Dyke on behalf of Appellant. May it please the Court. This is a really sad and tragic case in which an 8-year-old boy with serious psychiatric disabilities who even wound up hospitalized after a meltdown at school. Why did this happen? It happened because the school failed to do its job under the Americans with Disabilities Act, or the ADA. At least, those are the allegations set forth in the complaint. This is a classic case for disability discrimination based on a failure to provide reasonable accommodations. It involves one count under the ADA. Specifically, it led to... My understanding is that you had a settlement agreement as to the denial of FAPE, correct? That's correct. And the settlement agreement settled all the claims relating to the district's educational programs? Yes, Your Honor. And then, in that settlement agreement, it did not release the claims to be recovered under the ADA. Is that correct? That is also correct. All right. I just wanted to make sure. I thought that were the case, but I just wanted to make sure. Yes, and in fact, that's an important case. We contend that this isn't a FAPE case. In other words, a case about a free, appropriate public education under the IDEA, or the Individuals with Disabilities in Education Act at all. It's a classic ADA case. To the extent that this child had FAPE claims, and he had FAPE claims, he pursued the remedies available to him under the IDEA to their logical conclusion using the procedures outlined in the IDEA. That resulted in a settlement in which he obtained all of the relief that was available to him. Counsel? Yes, Your Honor. What about the remaining claims make them not subject to the IDEA? Because as the Supreme Court acknowledged in Frye, and this Court's acknowledged in Friye, they have rights under overlapping statutes, the ADA and the IDEA. But I'm asking you, what are the precise claims? The precise claim here is that he was excluded from school. He was, they called him, threatened him with hospitalization on the basis of his disabilities by failing to provide him with accommodations. Counsel? Excuse me. Go ahead. Judge Lippes. Thank you. Isn't it a fact, Counsel, that the one-on-one aid that you were seeking on behalf of your client, that that was addressed as part of the due process hearing, and it was addressed as part of the settlement that you reached? So, isn't it a fact that the one-on-one aid process, you know, did address that issue that you were raising about the need for the one-on-one aid? So, doesn't that indicate that FAPE was used to address the issue that you were trying to raise with respect to that kind of support? It addressed the issue, the FAPE issue, and we agree that he had FAPE issues and they were resolved to their logical conclusion in the ADA process, in the, excuse me, in the administrative process. They did not, he has separate and distinct disability discrimination claims because he alleges he wasn't provided reasonable accommodations and he suffered damages. He was discriminated as a result of his disabilities. In this case, he's only seeking damages for past personal injuries, for being excluded from school, from being humiliated, from being taunted, being threatened to have the police called on him. Those are not educational issues that has nothing to do with FAPE. It has everything to do with access to school. But I mean, the fact that there was a pursuit of IDA remedies often provides strong evidence that the substance of the claim concerned the denial of the FAPE. That's right out of the case law. That's correct. I think my colleague's question is pretty important. Given that there was a pursuit of the IDA remedies and given that there was a settlement of those remedies and it was really concerning the denial of the FAPE, why does that not then end our research on this issue? Because as Fry made very clear, a child with special education who qualifies for special education also has separate, distinct rights under the ADA. That's why the exhaustion provision of the ADA, of the IDEA, carves out specifically ADA claims, overlapping claims. I understood you would go to Fry, but what in Fry gets you where you want to go in this particular instance? I read the two examples in Fry. I didn't think they were very helpful. And so what is there in Fry that really gets you to a different place that you want to get? Footnote four. Footnote four in Fry on page 753. And it's become one of the most litigated footnotes in recent Supreme Court history, I believe. I was going to say, I don't know how that gets you to where you want to go. I understand, Your Honor, and I am not happy about having to be arguing about a footnote in front of you. Nevertheless, Fry gives us very, very clear direction. In footnote four, Fry tells us in a case that seeks damages for a non-IDEA claim, you must look at this court's, the Ninth Circuit's decision in pain. That's what the District Court failed to do. That's what all the District Courts, or many of the District Courts in the Ninth Circuit have been doing since Payne came down. The law in this circuit, at least for practitioners in the field, we thought it was pretty well decided. Payne said, if you have a damages claim for a non-IDEA case, you don't have to exhaust. It's not a fake claim. Fry comes down and in the end, and Fry also held that was not, did not turn out to be a fake case. They remanded it. They recognized it was, it appeared to be a simple disability discrimination case. So when we look at Payne, Payne says, you don't have to exhaust non-IDEA remedies because they're not available. And so the question... The counsel, excuse me, I mean, the critical question is, you know, have you put forth a non-IDEA claim? I mean, that's the, I think that's what we're trying to sort out. What is the grommet of your complaint? If in fact, it's a non-IDEA claim, then you're probably in pretty good shape with respect to your challenge to the District Court's decision. But I think that's what we've been trying to sort out. And I think Judge Smith was suggesting that the clues that Fry offers and trying to answer that question don't seem to be all that helpful to you. I would agree in that I believe that the Fry clues aren't particularly helpful. But as we discussed in our brief and we set forth, I don't think that the Fry clues preclude us here. But I want to get back to the point that you made and to remind us, we are at the stage of a motion to dismiss. This little boy was kicked out of court before he ever got the chance to allege his allegations that are based on being excluded from school. They didn't provide him any educational program whatsoever. Counsel, you did have an opportunity to make your allegations in your First Amendment complaint. Could you please go there and point out to us what the allegations are that establish an ADA claim as opposed to an IDEA claim? Yes, Your Honor. And I notice I'm almost out of time. May I continue? Yes, please. Briefly, could you point us in the complaint, amended complaint, to the an IDEA claim? Yes, Your Honor. Paragraph 38 and 39. What about 41? 41, you say, as a result of these, including but not limited to denial of equal access to the benefits of a public education. That's fake. Your Honor, it's meaningful access. Equal access is what we're asking for. He wanted access to the schoolhouse. We're not talking about meaningful access to an individualized educational program. The public... To the benefits of a public education. That's fake, in other words. I disagree, Your Honor. I don't believe that all educational claims fall within the rubric of fake. All right, Counsel, you can continue. Go ahead. But the clue to the gravamen of the suit is certainly the denial of the fake. Your Honor, the gravamen of the complaint is that he was excluded from school completely because of his disability-related behavior. He threw a tantrum and they sent him home. That's classic segregation and exclusion on the basis of disability. He never got the chance to get any instruction or to have any of the things under his IEP because he wasn't even allowed to attend school, at least not unless a parent was with him. Counsel, where in your amended complaint do you talk about him being thrown out of school? Your Honor, the complaint alleges that at pages... Specific paragraph is paragraph 10 in the excerpt of the record at page 35. They either required his parents to pick him up early because of his disability-disruptive behavior. But you said he was thrown out of school. Well, I believe there was a... To the extent... Not in your complaint. Pardon me? It's not in your complaint. I apologize if I use the term thrown out of school too loosely, if that implies that he was expelled. But I would suggest that, in fact, being sent home every day without any sort of due process based on his exclusion and his so-called bad behavior is, in fact, a de facto form of expulsion. All right. Thank you, Counsel. You've exceeded your time. We'll give you one minute for rebuttal. Thank you. Good morning. Matthew Hicks for Defendant and Appellee, Los Angeles Unified School District. May it please the Court. With all due respect to Counsel's argument, this is not a classic ADA case. That's the artful pleading that the Frey Court warned against. Plaintiff's allegations in his first amended complaint are for violations of the American Disabilities Act. However, the focus on the allegations are a failure to assess a one-to-one aid, and a failure to provide behavioral supports and services, and a failure to assess his behavioral tantrums. It's not about segregating the kid. He was never thrown out of any LAUSD program. Just one second, Mr. Hicks. Just one second. I think we lost Judge Rawlinson. Sorry to interrupt you in the middle of your getting ready to give us the business, but if she's not here to hear you, you're missing your opportunity. I see that she's not there. Thank you. Judges, this is Richard August. I am waiting to see Judge Rawlinson pop back up in the list of participants. If I don't have her in another 15 seconds, I will call her. Thank you. Judges, this is Richard. I have Judge Rawlinson on the phone. She is working to get her video call reestablished at this time. Judge Rawlinson, we can't hear you. Can you hear me now? Yes, ma'am. Yes. I'm sorry, counsel. You were just beginning when I had technical difficulties. I apologize. Could you please begin again? Sure, I'll start from the beginning. What I was saying was, contrary to what counsel was saying, this is not a classic ADA case. That's the artful pleading that the Fry Court warned against, and that's the recasting of allegations now at oral argument that were not made in the pleadings. Plaintiff's allegations in his first amended complaint focus on a failure to provide a one-to-one aid, and that is throughout the complaint. The other allegation is a failure to provide behavioral supports and services in assessments. That is the goal. But, counsel, Fry says that the question isn't really whether the student seeks relief for an injury that's educational in nature, but the critical question is whether the plaintiff has a separate and cognizable claim, based on the allegations in the complaint, for relief under the ADA or other federal law, irrespective of a FAPE obligation. The Fry Court... Isn't that what Fry says? Your Honor, Fry has a three-part analysis. The analysis is you look at the grovement of the allegations. The grovement of the allegations, regardless of whether, through artful pleading, they allege damages... Are you telling me no or yes? Because when I read Fry, it seemed pretty clear they were not. The question isn't what relief for the injury they're seeking, whether it's educational in nature, but the question is whether there's a separate and cognizable claim outside of the IDEA. Yes, with an exception. If there are allegations that are available under the Individuals with Disabilities Education Act that are FAPE-related and they require exhaustion, the... Well, but just one second. If there are such allegations and they're seeking the relief that you get under that IDEA, then at that point, I understand. But right here, they're not seeking those things. They're seeking money damages. Your Honor, the Paul G. 9th Circuit opinion addressed that. In that case, the plaintiff also sought damages contrary to appellant's brief where they said they were not seeking damages. That's not accurate. In the Paul G. 9th Circuit case, they were also seeking damages, but they were seeking remedies also available. That's the key language, under the IDEA. But in this particular instance, the IDEA damages were done. They were settled. And not only were they settled, but there were expressly excluded from the settlement any damages under the ADA. So wouldn't one expect a suit for damages under the ADA, even where the IDEA claims have been settled? No. Case law is clear in the SB case. So then the agreement they entered into wasn't worth what it was even written? Is that what you're arguing? Not at all, because they still got some services under that agreement, and probably attorney's fees for Ms. Van Dyke. So it was not a waste of time. It resolved several of the issues. However, the Fry Court says you're also supposed to look at the underlying due process complaint measured against the actual complaint in the litigation. You look at the progression. And here, if you look at the original complaint, which is part of the record, pages 16 through 29, it's a copy and paste job of the due process complaint. And so this is, again, the artful pleading the court warned against. It's about substance, not surface. Well, let's just stop here. Assuming that D.D. had no IEP claim, nothing that was covered under the IDEA, would he be able to bring an ADA claim against the school based on these facts? No. Why not? Because the factual allegations, the Grobman... I'm not talking if he had no IEP, nothing covered under the IDEA, would he be able to bring this claim under the ADA for the same exact things? No, not if you go through the two-part hypothetical provided in the Fry case. Well, frankly, I didn't find those hypotheticals at all helpful, as I've said. I'm trying to focus on the critical question. I'm going to quit interrupting you, but that's why I wanted you to focus on this question, which I think is quite important. Your Honor, it's making an assumption that doesn't exist. The allegations are a failure to provide a one-to-one aid and a failure to provide behavioral supports and services. If they were not making that allegation, if they were alleging, for example, that we did not allow him to provide a guide dog or a service dog like in the Fry case or the Doucette case that they cite, then that is clear ADA issues. That's clear Rehabilitation Act issues. We are not dealing with that here. So I think the answer... Excuse me, counsel. Why isn't this case very much like to set in the sense that the one-on-one aid that was being sought was essential to the child's access to the public school education process? The parents were saying that without that aid, my child will not be able to participate in the educational process. And in fact, that's exactly what happened. Because he did not get the aid, he had behavioral problems at school, and he was sent home over and over again. So why isn't that very much an issue of access, just as it was in Doucette with the use of a service dog? In some sense, the one-on-one aid here is very much like the service dog. It was essential to allowing this child to have the benefit of an educational experience. It's factually distinguishable. In that case, the service dog was there to provide notice of seizures. It was a seizure alert dog. These were life-threatening seizures that the school district would not allow this kid to bring onto campus. At some point, the school district capitulated and said, you can bring them, but under certain conditions. Well, that's straight out of ADA. That's not what we're dealing with here. We are dealing with education. Counsel, is it fair to say that the use of a guide dog is not something that would be addressed in an IDEA? Based on Frye and based on Doucette, although Doucette's not Ninth Circuit, I would say that yes. Counsel, may I ask you just another question, please? Of course. In terms of the history of this case, isn't it true that for a number of years, the only response that ED was seeking from the school was this provision of this one-on-one aid? And because he did not get that, he had all the problems that opposing counsel has described. He was not seeking an individually-tailored educational program that fate might provide. For a number of years, all he wanted was the support that a one-on-aid would get. Now, it's true that eventually they entered into the due process and an IEP emerged from that. But that IEP, that process and the outcome of that did not begin to address what he had experienced for a number of years because the school failed to offer what he characterizes as a reasonable accommodation. In your honor, those should have been addressed through the OAH process and the due process. This is exactly akin to the SB case. I'll refer the court to the SB case. There, the plaintiff had ADHD, just like our plaintiff. There, the plaintiff had all kinds of temperament, hostility, violence issues. In that case, the plaintiff was shifting around between Fresno Unified Schools. Here, because of his education, he was shifted to two or three LAUSD schools that he was trying to find palatable. It's on all fours with the SB case where the court said, all that being said, you still have to exhaust. So, in closing, your honor, it looks like I have about 10 seconds. You're over your time, actually. Okay, thank you. We ask that the court respectfully affirm the district court's decision, granting motion to dismiss, dismissing the complaint.  Let's have one minute for rebuttal. Thank you, your honor. Very quickly, I would like to refer the court specifically to paragraphs 13, 14, 19, and 20 of the first amended complaint, which contain the allegations that we claim support an ADA claim, allegations of being sent home from school, excluded, threatened with the police, taunted, and humiliated. This case is confusing, I think, because it talks about a behavioral aid, but we shouldn't lose sight of the fact that he pursued all of his administrative remedies. This isn't a fake claim in disguise. We're seeking damages, and even under Paul G. and all the cases post Frye, say if you're seeking damages, you should look at pain, and that's really the issue before this court. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Lipez, Rawlinson, N.R. Smith